**FILED**
**IN STONE COUNTY, ARKANSAS**

MAR 2 5 2022

AT 1:07 O'CLOCK ___ M.

ANGIE HUDSPETH-WADE, CLERK

BY _____ DC

## IN THE CIRCUIT COURT OF STONE COUNTY, ARKANSAS
### DIVISION

**DESTINY DAWN ROTH**                                           **PLAINTIFF**

**vs.**                     CASE NO. CV-2022-18

**SHELTER MUTUAL INSURANCE**
**COMPANY**                                                    **DEFENDANT**

### COMPLAINT

Comes now the Plaintiff, Destiny Dawn Roth, by and through her attorneys, TAYLOR &

TAYLOR LAW FIRM, P.A., and for her Complaint does state:

### JURISDICTION AND VENUE

1.      At all times relevant to this Complaint, Plaintiff was a resident of Fox, Stone

County, Arkansas, and was a citizen of the State of Arkansas.

2.      At all times relevant to this Complaint, Defendant was an insurance company

authorized and doing business in Stone County, Arkansas.

3.      The facts and circumstances giving rise to this Complaint occurred in Mountain

View, Stone County, Arkansas.

4.      This Court has subject matter jurisdiction of this matter pursuant to Ark. Code

Ann. § 16-13-201(a).

5.      This Court has personal jurisdiction of the parties pursuant to Ark. Code Ann. §

16-4-101(B).

Page 1 of 12

## EXHIBIT A

6.      Venue in this county is proper pursuant to Ark. Code Ann. § 16-60-101(a)(1) (county in which a substantial part of the event or omission giving rise to the cause of action occurred), & (a)(3)(A) (county in which the plaintiff resided).

## FACTS

7.      On or about January 2, 2020, Plaintiff was a passenger in a vehicle traveling on Highway 9 in Mountain View, Arkansas.

8.      Gretchen Bickerstaff (the "Tortfeasor") was also traveling on Highway 9 in Mountain View, Arkansas.

9.      The vehicle that Plaintiff was traveling in came to a stop at a red light.

10.     The Tortfeasor was driving inattentively and mistakenly believed that traffic was moving forward.

11.     Consequently, the Tortfeasor failed to stop and rear-ended the vehicle in which Plaintiff was a passenger.

12.     Plaintiff began experiencing head and neck pain following the accident.

13.     Plaintiff was treated at Holt Chiropractic for her head and neck pain.

14.     Plaintiff then had an MRI of her head and neck, which revealed significant cord syrinx from C5 to thoracic region and mild spondylosis.

15.     Plaintiff began experiencing additional symptoms, including but not limited to, headaches, eye twitching, a painful scalp, memory loss, and swollen lymph nodes.

16.     Plaintiff was treated at Dr. Andy's Family Practice, where she was diagnosed with cervicalgia and headaches resulting from the collision.

17.     The Plaintiff's pain did not resolve, so she sought treatment at the Neurological Surgery Associates Clinic.

18.     At the Neurological Surgery Associates Clinic, Plaintiff was diagnosed with Arnold-Chiari syndrome, syringomyelia, and syringobulbia.

19.     In addition to her continued pain and headaches, the Plaintiff's right side of her body began going numb.

20.     Plaintiff was then treated at the Mayo Clinic, where she was diagnosed with migraines related to cervical irritation, pressure, and/or the Chiari malformation, right-sided occipital nerve compression, and cervicalgia.

21.     The Mayo Clinic ordered a nerve block, physical therapy, and facet injections.

22.     Plaintiff was also treated by Legacy Spine and Neurological Specialists, where it was recommended that the Plaintiff have yearly nerve blocks to help with her pain.

23.     The Tortfeasor was negligent in the following ways:

    A.     Reckless driving in such a manner as to show disregard for the safety of persons and property in violation of Ark. Code Ann. §27-50-308;

    B.     Careless and prohibited acts of driving in violation of Ark. Code Ann. §27-51-104, and other violations of applicable Arkansas traffic laws;

    C.     Failure to keep a proper lookout for other vehicles on the roadway;

    D.     Failure to drive at a speed that was reasonable under the circumstances;

    E.     Failure to keep the Tortfeasor's vehicle under proper control; and

F.   Failure to otherwise use ordinary care under the circumstances at the time of the collision.

24.   In the police report, the Tortfeasor admitted her negligence, stating, "I take full responsibility for this accident."

25.   As a direct result of this negligence, Plaintiff suffered the following injuries:

A.   Serious bodily injuries to Plaintiff's head, neck, shoulder, arm, hand, and other parts of Plaintiff's body;

B.   Memory loss, headaches, eye twitching, body aches, and dizziness;

C.   Medical expenses incurred in the past, and transportation expenses to obtain such medical treatment;

D.   Future medical expenses to be incurred, and transportation expenses to obtain such future medical treatment;

E.   Physical pain and disability experienced in the past;

F.   Physical pain and disability to be experienced in the future;

G.   Loss of income in the past;

H.   Loss of income in the future;

I.   Loss of earning capacity due to permanent physical impairment from the injuries caused by the collision;

J.   Mental anguish experienced in the past, which includes but is not limited to Plaintiff's loss of quality of life due to permanent injuries causing chronic pain that limited her activities;

     K.     Mental anguish to be experienced in the future, which includes but is not limited to Plaintiff's loss of quality of life due to permanent injuries causing chronic pain that limits her activities;

     L.     Any scars, disfigurement, and visible results of her injury due to "residential limitation of motion;" *Adkins v. Kelley*, 244 Ark. 199, 424 S.W.2d 373 (1968);

     M.     The reasonable expense of any necessary help in Plaintiff's home in the past, and reasonably certain to be required in the future, as a result of Plaintiff's injuries; and

     N.     Permanent bodily injuries that have been suffered, which is a life-changing event causing Plaintiff to lose the ability to enjoy a normal life.

26.     At the time of the incident described hereinabove, Shelter Mutual Insurance Company, was a corporation registered and licensed to sell insurance in the State of Arkansas.

27.     Shelter Mutual Insurance Company sold an insurance policy (the "Policy") to Plaintiff.

28.     The Policy was in force at all times relevant to this litigation.

29.     The Policy included underinsured motorist coverage ("UIM Coverage").

30.     The UIM Coverage policy limits were $25,000 per person.

31.     A copy of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

32.     If a different form or version of the Policy is later obtained, this pleading will be supplemented to comply with Arkansas Rule of Civil Procedure 10.

33.     Plaintiff reached a settlement with the Tortfeasor's insurance company for the policy limits of $100,000 (the "Settlement").

34.     Prior to settlement, Plaintiff strictly complied with the requirements of Ark. Code Ann. § 23-89-209(c) and/or obtained consent from Shelter Mutual Insurance Company to settle.

35.     Plaintiff's past medical bills total $41,789.69, and her future medical care is estimated to cost $1,376,479.

36.     Given the severity of Plaintiff's injuries and the need for future treatment, the Settlement did not adequately compensate Plaintiff.

37.     Therefore, on or about July 27, 2021, Plaintiff demanded that Defendant tender the UIM Coverage limits.

38.     On September 13, 2021, Plaintiff's attorney called Defendant for an update.

39.     Defendant informed Plaintiff's attorney that the demand got lost, but that Plaintiff should hear something by the end of the following week.

40.     Accordingly, on September 20, 2021, Plaintiff's attorney followed-up with the Defendant via email.

41.     On September 22, 2021, Plaintiff's attorney called Defendant and left a voicemail.

42.     On October 7, 2021, the Defendant told Plaintiff's attorney that the demand was next to be reviewed, and that Plaintiff would hear something by the following week.

43.     Subsequently, on October 14, 2021, Plaintiff's attorney followed-up with Defendant via email.

44.     On November 2, 2021, Defendant called and asked Plaintiff's attorney to resend the first eight pages of the demand.

45.     Plaintiff's attorney promptly re-sent the requested pages.

46.     On November 11, 2021, Plaintiff's attorney emailed the Defendant for an update.

47.     On November 12, 2021, Defendant responded via email stating that the Plaintiff's demand was under review.

48.     On December 7, 2021, Plaintiff's attorney emailed Defendant for an update.

49.     Again, on December 10, 2021, Plaintiff's attorney emailed Defendant for an update.

50.     Defendant responded to via email stating that Plaintiff should receive an offer later that day.

51.     The Plaintiff did not receive an offer, or even hear from the Defendant, on December 10, 2021.

52.     Instead, on December 13, 2021, Plaintiff's attorney emailed the Defendant asking for an update.

53.     On December 14, 2021, Plaintiff's attorney, once again, emailed the Defendant asking for an update.

54.     On December 27, 2021, Plaintiff's attorney called the Defendant.

55.     During the call on December 27, 2021, exactly five months from when the demand was made, the Defendant denied the demand and unofficially offered to settle for $1,000 to $2,000.

## CAUSE OF ACTION #1 – BREACH OF CONTRACT

56.     At the time of the wreck described hereinabove, Plaintiff had in effect with Defendant the UIM Coverage with policy limits of $25,000.

57.     The UIM Coverage provided that in the event Plaintiff should be involved in a wreck caused by the negligence of an underinsured motorist, the damages would be compensated in an amount not to exceed the UIM Coverage policy limits.

58.     As a direct and proximate result of the Tortfeasor's negligence, Plaintiff has suffered injuries as stated hereinabove.

59.     Under the terms of the UIM Coverage, the Tortfeasor was an underinsured driver, in that the Tortfeasor only carried a policy of liability insurance with limits of $100,000 per person.

60.     This limit was insufficient to compensate Plaintiff for her damages.

61.     Defendant has failed to comply with the terms of its own policy of insurance.

62.     There is no legal basis for Defendant's continuing failure to comply with the terms of the Policy.

## CAUSE OF ACTION #2 – BAD FAITH

63.     At all times relevant herein, Defendant had a duty and agreement to act in good faith and deal fairly with Plaintiff when Defendant entered into a contractual agreement with and accepted premium payments.

64.     Defendant thereby assumed a special relationship with, and fiduciary obligations to, Plaintiff, and agreed to abide by its respective duties.

65.     Defendant intentionally breached these duties by engaging in dishonest, oppressive, and malicious acts in an attempt to avoid liability under the UIM Coverage.

66.     Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, consciously disregarding or turning a blind eye to clear medical records and documentation in the claims file that Plaintiff had suffered bodily injuries to her head, neck, shoulder, arm, hand, and other parts of Plaintiff's body, as well as memory loss, headaches, eye twitching, body aches, and dizziness.

67.     Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, consciously disregarding or turning a blind eye to clear medical records and documentation in the claims file that Plaintiff will need future treatment for the injuries she sustained as a result of the motor vehicle collision.

68.     Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, forcing Plaintiff to seek legal redress. By consciously disregarding or turning a blind eye to clear evidence, Defendant, knowing it had no legal justification for doing so,

purposefully forced Plaintiff to file this Complaint in order to obtain the insurance proceeds to which Plaintiff is entitled.

69.    Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, setting out to collect the minimum facts it could find to issue a denial.   Had Defendant conducted a competent investigation and review of medical records and bills, the UIM Coverage limits should have been tendered immediately.

70.    Defendant has engaged in, in the course of their dealing with Plaintiff, a pattern of deception and unfair practices. This dishonest, oppressive, and malicious behavior constitutes bad faith under Arkansas law.

## AMOUNT OF DAMAGES
### (FOR JURISDICTIONAL PURPOSES UNDER ARK. CODE ANN. § 16-63-221)

71.    Plaintiff's injuries and damages are less than the minimum amount required for federal court jurisdiction in diversity of citizenship cases.

## DEMAND FOR TRIAL BY JURY

72.    Plaintiff demands a trial by jury for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

73.    Upon completion of discovery, Plaintiff reserves the right to plead further to state additional claims and to name additional parties to this action.

## PRAYER FOR RELIEF

74.    Plaintiff is entitled to recover all of the damages set forth hereinabove, all of which exceed the amount of the UIM Coverage limits.

75.    Plaintiff is entitled to recover punitive damages against Defendant as a result of Defendant's dishonest, oppressive, or malicious conduct that amounts to bad faith under Arkansas law.

76.    With respect to Plaintiff's breach of contract claim, Plaintiff is entitled to attorney's fees, costs, a 12% penalty, and pre- and post-judgment interest pursuant to Ark. Code Ann. § 23-79-208.

77.    Plaintiff is also entitled to attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and costs pursuant to Ark. R. Civ. P. 54.

WHEREFORE, Plaintiff prays for judgment against Defendant for the damages caused by Defendant's breaches described above, in an amount as set forth above, and for all other relief at law or equity to which Plaintiff may be entitled.

Respectfully submitted,
Destiny Dawn Roth,
*Plaintiff*

BY: _____

TAYLOR & TAYLOR LAW FIRM, P.A.
Andrew M. Taylor, Ark. Bar No. 2005147
Tasha C. Taylor, Ark. Bar No. 2005148
12921 Cantrell Road, Suite 205
Little Rock, AR 72223
Phone: (501) 246-8004
Fax:    (501) 246-8009
Email: Andy@TaylorLawFirm.com
          Tasha@TaylorLawFirm.com

*Counsel for Plaintiff*